AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

## UNITED STATES DISTRICT COURT
for the

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>LG Model: LG-SP200,<br>S/N: 803VTGT0561999 | ) ) ) ) )    Case No.  '22 MJ04087 |

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841, 846 | Distribution of Methamphetamine and Conspiracy to do the same |
| 18 USC 922(g) | Felon in Possession of a Firearm |
| 18 USC 924(c) | Using, Carrying, or Possessing a Firearm During and in Relation to a Drug Trafficking Crime |

The application is based on these facts:
See attached Affidavit of Federal Bureau of Investigation Special Agent Matthew Aday

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI Special Agent Matthew Aday
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   Telephone    *(specify reliable electronic means)*.

Date: 11/8/2022

*Judge's signature*

City and state: San Diego, CA    Hon. Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

LG Model: LG-SP200
S/N: 803VTGT0561999
(**Target Telephone**)

**Target Telephone** was seized incident to the arrest of Victor Sanchez on August 21, 2022. It is currently in the custody of the FBI San Diego Field Division at 10385 Vista Sorrento Parkway, San Diego CA 92121.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the **Target Telephone** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile devices for evidence described below. The seizure and search of the cellular/mobile devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile device will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 1, 2022 to and including August 21, 2022:

   a. tending to indicate efforts to possess and/or transport with the intent to distribute federally controlled substances within the United States and efforts to possess, obtain, or purchase firearms or ammunition;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the, or possession and/or transportation with the intent to distribute federally controlled substances within the United States and the possession or purchase of firearms or ammunition;

   c. tending to identify co-conspirators, criminal associates, or others involved in possession and/or transportation with the intent to distribute federally controlled substances within the United States and efforts to possess, obtain, or purchase firearms or ammunition;

   d. tending to identify travel to or presence at locations involved in the possession and/or transportation with the intent to distribute federally controlled substances within the United States and efforts to possess, obtain, or purchase firearms or ammunition, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the **Target Telephone**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 18, United States Code, Section 924(c); Title 18, United States Code, Section 922(g); and Title 21, United States Code, Sections 841 and 846.**

# AFFIDAVIT

I, Matthew R. Aday, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following cellular telephone:

    a. LG Model: LG-SP200, S/N: 803VTGT0561999, as further described in Attachment A, and incorporated herein by reference,

and seize evidence of crimes, specifically, violations of Title 18, United States Code, Section 924(c) (Using, Carrying, or Possessing a Firearm During and in Relation to a Drug Trafficking Crime), Title 18, United States Code, Section 922(g) (Felon in Possession of a Firearm), and Title 21, United States Code, Sections 841 and 846 (Distribution of Methamphetamine and Conspiracy to do the same) ("Target Offenses") as described in Attachment B. The **Target Telephone** was seized incident to the arrest of Victor Sanchez on August 21, 2022. A factual explanation supporting probable cause follows. The **Target Telephone** is currently in the custody of the San Diego Federal Bureau of Investigation (FBI) field office located at 10385 Vista Sorrento Parkway, San Diego CA 92121.

2. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents, and review of evidence from U.S. Border Patrol. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Telephone**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates and times are approximate.

## EXPERIENCE AND TRAINING

3. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

1

4. I am a Special Agent with the FBI and have been so employed since June 2021. I am currently assigned to the East County Regional Gang Task Force (hereinafter, "ECRGTF") of the San Diego Field Office where I investigate various crimes that include, but are not limited to, drug trafficking, weapons trafficking, homicides, and other gang-related violent crime.

5. Prior to my assignment to the ECRGTF, I completed approximately eighteen weeks of training at the FBI Academy in Quantico, Virginia. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills, and a variety of other subjects.

6. Since joining the ECRGTF, I have conducted surveillance in numerous narcotics and firearms offenses. I have debriefed numerous current and former drug traffickers and gang members who participated in drug trafficking and obtained firearms unlawfully. From these debriefs and my conversations with experienced narcotics investigations, I have learned that narcotics and firearms traffickers communicate and coordinate their illicit activities through the use of cellular telephones, including utilizing prepaid calling cards, direct connect (radio-to-radio), texting capabilities, and through the use of various phone applications. I also know that narcotic and firearms traffickers often change phones as a means to evade detection by law enforcement. Moreover, I know that narcotics and firearms traffickers often get phones from third parties and/or subscribe to them in fictitious names in order to mask the true identities of the individuals using the phones.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics and firearms trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

2

    a. Drug and firearms traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug and firearms traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug and firearms traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug and firearms traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Drug and firearms traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f. Drug and firearms traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

    g. Drug and firearms traffickers and their co-conspirators often use portable Wi-Fi/hotspot devices. Wi-Fi hotspots are internet access points that allow the drug traffickers to connect to a Wi-Fi network, which are "pocket-sized" mobile routers that allow the connection to the internet, via Wi-Fi. This allows the traffickers to make phone calls, via Wi-Fi from anywhere, and limit their personal/identifying data to be detected.

    h. The use of cellular telephones by drug or firearms traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can

and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a. tending to indicate efforts to possess and/or transport with the intent to distribute federally controlled substances within the United States and efforts to possess, obtain, or purchase firearms or ammunition;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the, or possession and/or transportation with the intent to distribute federally controlled substances within the United States and the possession or purchase of firearms or ammunition;

c. tending to identify co-conspirators, criminal associates, or others involved in possession and/or transportation with the intent to distribute federally controlled substances within the United States and efforts to possess, obtain, or purchase firearms or ammunition;

d. tending to identify travel to or presence at locations involved in the possession and/or transportation with the intent to distribute federally controlled substances within the United States and efforts to possess, obtain, or purchase firearms or ammunition, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Telephone**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

**A.    Arrest of Victor Sanchez on August 21, 2022**

9.    On August 21, 2022, at approximately 1:25 p.m., Border Patrol Agent ("BPA")

4

Salvador Contreras and his human-narcotics detection dog ("HNDD") were performing pre-primary checks at the Interstate 8 Border Patrol Checkpoint. The HNDD alerted to the rear of a Hyundai Elantra. BPA Contreras notified BPA Alonso Rattigan, who was working primary inspection. BPA Contreras conducted an immigration inspection of the driver, who was later identified as Victor Sanchez, and two passengers. All three occupants of the vehicle stated they were U.S. citizens. BPA Rattigan referred the vehicle to secondary inspection. In secondary inspection, BPA Contreras asked all three occupants to exit the Elantra in order to perform a canine sniff. BPA Contreras' HNDD subsequently alerted to a black backpack in the back seat of the Elantra. As BPA Contreras searched the vehicle after the alert, he found a firearm underneath the driver's seat.

10. Agents at the checkpoint ran records checks and determined that Sanchez had an outstanding warrant. BPAs Jesus Pina and Contreras approached the three individuals and asked about the firearm found in the vehicle. All three individuals denied knowledge and a female passenger stated the vehicle was a rental. As BPA Pina was attempting to handcuff Sanchez for his active warrant, Sanchez pushed BPA Pina and fled on foot. BPA Pina gave verbal commands for Sanchez to stop, but Sanchez did not comply. Sanchez ran into oncoming traffic as he was passing the checkpoint. BPAs Pina and Hector Trillo chased after Sanchez and saw him get on the rear bumper of a white pickup truck. The pickup truck stopped after a few hundred yards. Sanchez jumped off the truck and crossed the I-8 eastbound lands and into the brush between I-8 and Old Highway 80. Sanchez continued to disregard agents' commands to stop.

11. Eventually BPAs caught up to Sanchez. Sanchez swung his arms and struck Agent Pina in the chest. Sanchez lunged again toward Agent Pina's midsection. Agent Pina used his Electronic Control Weapon to subdue Sanchez. Sanchez at first appeared to comply with Agent Pina's commands, but began to push away. Sanchez then grabbed at Agent Pina's Electronic Control Weapon, attempting to take it away. Agents Trillo and Pina were eventually able to handcuff Sanchez and place him under arrest.

12. Inside the Elantra, agents discovered and seized a plastic bag containing approximately 300 grams of a crystal-like substance which subsequently field-tested positive for methamphetamine, a plastic bag containing approximately 150 blue M30 pills which subsequently field-tested positive for fentanyl, and a plastic bag containing 9 tablets of ecstasy. Agents also seized the firearm, which was a 1911 style pistol. BPAs found a .45-millimeter shell casing in the backseat. Inside the black backpack, agents found two loaded firearm magazines and a box of ammunition. Investigators also found a black digital scale with what appeared to be narcotics residue on it. The **Target Telephone** was seized by the U.S. Border Patrol and subsequently transferred to FBI custody.

13. Post-arrest, passenger Brittany Elcox was read her *Miranda* rights by BPA Evin Anderson. Elcox elected to waive her rights and make a statement. Elcox stated that they were driving from the Golden Acorn Casino to her house. Elcox stated that Sanchez had been staying with her since May 2022. Elcox denied knowledge of what was found in the vehicle. Elcox stated she knew Sanchez to carry a firearm on him.

14. Sanchez was arrested and charged by federal complaint with Assault on a Federal Officer, in violation of 18 U.S.C. § 111(a)(1). On or about August 31, 2022, a Grand Jury in the Southern District of California returned an Indictment charging Sanchez with being a Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g); felony Assault on a Federal Officer, in violation of 18 U.S.C. § 111(a)(1); Possession of Methamphetamine With Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1); and Possession of Fentanyl With Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1).

15. A preliminary review of Sanchez' criminal history indicated Sanchez has been convicted of several prior felonies, as depicted on the below chart. All of these felony convictions are punishable by terms of imprisonment exceeding one year. As a result of these convictions, Sanchez is prohibited from possessing firearms and ammunition. It is possible there may be additional history located after further queries are conducted.

| CONVICTION DATE | COURT OF CONVICTION | CHARGE | TERM OF IMPRISONMENT |
|---|---|---|---|
| 2/29/2000 | CASC – San Diego | 10851(a) VC – Taking Vehicle Without Consent (felony) | 2 years jail |
| 7/30/2003 | CASC – San Diego South Bay | 245(a)(1) PC – Assault With a Deadly Weapon (felony) | 2 years jail |
| 11/29/2006 | CASC – San Diego South Bay | 2800.2(a) VC – Reckless evading a police officer (felony) | 32 months jail |
| 7/29/2009 | CASC – San Diego South Bay | 245(a)(1) PC – Assault With a Deadly Weapon (felony) | 9 years prison |
| 9/29/2018 | CASC – El Cajon | 11378 H&S – Possession of Methamphetamine for sale (felony) | 4 years jail |
| | | 496(A) PC – Receiving stolen property (felony) | 16 months jail |

16.  I have probable cause to believe that the firearm found under the driver's seat likely belonged to Sanchez. First, he was the driver of the vehicle with dominion and control over it. The firearm was found under the driver's seat, mere inches from Sanchez. Second, passenger Elcox, who stated she had been living with Sanchez for several months before the incident, stated that Sanchez was known to carry a firearm. Finally, based on my training and experience, I am aware that firearms are valuable commodities and can cost several hundred to nearly $1000 to purchase on the black market. Given the value, it is highly unlikely that a firearm would have been discarded by the prior renter of the vehicle and not found during the rental return process. I believe Sanchez, as a convicted felon, would have needed to coordinate with other individuals for weeks or months to unlawfully acquire a firearm and the ammunition. Therefore, I believe that the **Target Telephone** may have evidence of Sanchez' attempts to illegally purchase or obtain the firearm and the

7

ammunition. I believe based on my training and experience that these conversations can often take weeks or months to coordinate and sometimes result in failed attempts to meet up and purchase. I therefore respectfully request permission to search the **Target Telephone** for evidence related to Sanchez' unlawful possession of the firearm and ammunition from July 1, 2022, to and including August 21, 2022.

17. In my training and experience, I am aware that 300 grams of methamphetamine and 150 fentanyl pills are distributable quantities and not for personal use. Drug trafficking requires detailed planning and coordination to obtain the drugs from a particular person at a particular location. This often occurs days or weeks prior to the actual distribution event. Coconspirators communicate with one another in efforts to ensure success in getting their valuable cargo to the distributor who will conduct end-user sales. In this case, I believe the coordination between Sanchez and his supplier(s) of the methamphetamine and fentanyl likely began at least several weeks before it was discovered on August 21, 2022. First, the 300 grams of methamphetamine seized is a significant quantity and has hundreds of individual end-user "hits" of methamphetamine. The amounts and multiple types of drugs seized from Sanchez' vehicle indicates that there was a level of trust between Sanchez and his supplier, making it more likely that there will be a history of narcotics transactions on the **Target Telephone**. Therefore, I respectfully request permission to search the **Target Telephone** for evidence of the Target Offenses from July 1, 2022 to and including August 21, 2022.

17. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Telephone** which may identify other persons involved in narcotics trafficking and other criminal activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics and firearm trafficking activities of Victor Sanchez such as telephone numbers, made and

8

received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos and other digital information are stored in the memory of the **Target Telephone**.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

21. The United States is not aware of any prior attempts to obtain the evidence sought in this warrant.

**CONCLUSION**

22. Based on all of the facts and circumstances described above, there is probable cause to conclude that Victor Sanchez used the **Target Telephone** to facilitate violations of the Target Offenses.

23. Because the **Target Telephone** was promptly seized during the arrest of Victor Sanchez and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by Sanchez continues to exist on the **Target Telephone**. As stated above, I believe that evidence of the Target Offenses will cover the time period from July 1, 2022 to and including August 21, 2022.

WHEREFORE, I request that the court issue warrants authorizing law enforcement agents and/or other federal and state law enforcement officers to search the property described in Attachment A and the seizure of items listed in Attachment B, using the methodology described above.

_____
Matthew R. Aday
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 8th day of November, 2022.

_____
The Honorable Michael S. Berg
United States Magistrate Judge

10